**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 14-1990**

—————

DESIGN RESOURCES, INC.,

　　　　　Plaintiff - Appellant,

　　　v.

LEATHER INDUSTRIES OF AMERICA; DR. NICHOLAS J. CORY; ASHLEY
FURNITURE INDUSTRIES, INC.; TODD WANEK,

　　　　　Defendants - Appellees.

—————

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.　William L. Osteen,
Jr., Chief District Judge.　(1:10-cv-00157-WO-LPA)

—————

Argued:　May 13, 2015　　　　　　Decided:　June 18, 2015

—————

Before NIEMEYER, DUNCAN and THACKER, Circuit Judges.

—————

Affirmed by published opinion.　Judge Duncan wrote the opinion,
in which Judge Niemeyer and Judge Thacker joined.

—————

**ARGUED**:　John Raymond Neeleman, LANE POWELL, PC, Seattle,
Washington, for Appellant.　William Andrew Copenhaver, WOMBLE
CARLYLE SANDRIDGE & RICE, LLP, Winston-Salem, North Carolina;
Richard Dominick Milone, Jr., KELLEY DRYE & WARREN LLP,
Washington, D.C., for Appellees.　**ON BRIEF**: Kristin Beneski,
LANE POWELL, PC, Seattle, Washington, for Appellant.　Cameron
Argetsinger, KELLEY DRYE & WARREN LLP, Washington, D.C., for
Appellees Leather Industries of America and Dr. Nicholas J.
Cory; Brent F. Powell, WOMBLE CARLYLE SANDRIDGE & RICE, LLP,
Winston-Salem, North Carolina, for Appellees Ashley Furniture
Industries, Inc. and Todd Wanek.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Design Resources, Inc. ("DRI"), appeals the district court's entry of summary judgment in favor of Defendants-Appellees Leather Industries of America ("LIA") and Ashley Furniture Industries, Inc. ("Ashley"), on DRI's false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a). DRI alleged that an advertisement placed in a trade magazine by Ashley (the "Ashley Ad"), as well as two statements by Dr. Nicholas Cory, director of LIA's research laboratory, which ran in articles in the same publication, were false and misleading. The district court granted summary judgment to LIA and Ashley, concluding that DRI had not presented sufficient evidence to establish a Lanham Act claim. For the reasons that follow, we affirm.

I.

A.

Appellee Ashley is the fifth largest furniture manufacturer in the United States. J.A. 116. In addition to manufacturing furniture, Ashley operates and licenses retail locations that bear its name, and it sells its furniture to other retailers, such as Costco and Walmart. J.A. 986-88. Appellee LIA is a leather industry trade association, which owns the Leather

2

Research Laboratory (the "Laboratory").[1]  Dr. Nicholas Cory is a leather chemist and the director of the Laboratory.  He and his lab provide labeling advice to companies who market leather and leather-look products, as well as testing services to determine such products' leather content for purposes of federally mandated disclosure to consumers.

Appellant DRI develops furniture coverings and sells its products to furniture manufacturers.  In late 2006, DRI developed a "synthetic leather-look furniture covering product, which it initially called 'Veneto'" and later renamed as "NextLeather®."  Appellant's Br. at 8.  NextLeather® is "composed of 61% polyurethane, 22% poly/cotton, and 17% leather."  Id.  "[I]t has a polyurethane face on a fabric core and is backed with a thin layer of leather fibers adhered (i.e., bonded) to its base or underside."  Id.  The use of leather fibers as backing, as opposed to "single-piece leather 'splits' . . . , represented an improvement in the ability of a leather-look product to mimic real leather . . . because it made the material more pliable and allowed it to drape more fluidly over

---

[1]  There was a factual dispute below concerning LIA's ownership of the Laboratory.  The district court did "not find that factual dispute material" to its decision and therefore "reache[d] its legal conclusion without resolving [the] issue."  J.A. 1760 n.2.  Because we affirm the district court's grant of summary judgment to LIA, this factual question is not relevant to our analysis either, and therefore need not detain us.

a furniture frame." Appellant's Br. at 8.

In December 2006 and January 2007, DRI requested labeling advice and composition testing of its NextLeather® product from Dr. Cory at LIA's laboratory. Dr. Cory advised that the product could "ABSOLUTELY NOT!" be characterized or marketed as leather. J.A. 261. He cited the Federal Trade Commission's Guides for Select Leather and Imitation Leather Products ("FTC Guides"), which specify that products containing ground or shredded leather, rather than comprising "wholly the hide of an animal[,] should not be represented, directly or by implication, as being leather." J.A. 261 (quoting 16 C.F.R. § 24.2(f)[2]). Instead, Dr. Cory suggested, DRI could label NextLeather® as "[n]ot leather," "[r]econstituted leather," or "[b]onded leather." J.A. 261.

In early 2007, DRI began marketing NextLeather® as "bonded leather," disclosing the product's composition on a label in compliance with the FTC Guides. DRI viewed its product as innovative and believed that "NextLeather® was the first and only such product marketed as 'bonded leather.'" J.A. 1289-90. In preparation for the Spring High Point Market in North

---

[2] Dr. Cory referred to the FTC Guides in place in 2006, which remained in effect throughout the underlying litigation. In 2007, the FTC sought public comment on whether to revise the Guides, 72 Fed. Reg. 28,906, 28,907 (May 23, 2007) (to be codified at 16 C.F.R. pt. 24), but in 2008, decided to retain them unchanged, 73 Fed. Reg. 34,626, 34,630 (June 18, 2008) (to be codified at 16 C.F.R. pt. 24).

Carolina--an important, annual furniture industry event--DRI sold samples of NextLeather® to 25 leading furniture manufacturers. Those manufacturers would then debut furniture products made with NextLeather® at the Spring High Point Market, from March 26 to April 1, 2007.

In the weeks leading up to and following the Spring High Point Market, Ashley placed a series of full-page ads in Furniture Today, a widely read trade magazine. According to DRI, one of the ads--which ran in the March 12, March 31, and April 30, 2007 issues--contained false statements about DRI and NextLeather®. In relevant part, the text of the ad read as follows: "Is It REALLY LEATHER? . . . Some upholstery suppliers are using leather scraps that are mis-represented as leather . . . . Know What You Are Buying[.] REMEMBER . . . The Overseas Manufacturer Has NO Liability In The U.S.A. You Do!" J.A. 274, 281, 283 (third ellipsis in original).

On July 2, 2007, Furniture Today published an article written by Joan Gunin and entitled, "Chemist fears confusion over imitators may hurt category." J.A. 86. This article (the "Gunin Article") quoted Dr. Cory as saying the following: "To call [leather alternatives such as bonded leather] 'leather' is outright deception, outright fraud. . . . It's not leather. . . . It's a synthetic that has leather fibers glued to the underside." J.A. 86 (second ellipsis in original).

5

A week later, on July 9, 2007, <u>Furniture Today</u> published an article written by Susan Andrews and entitled, "For consumers' sake, let's not call it 'bonded leather.'" J.A. 108. This article (the "Andrews Article") referred to "[n]ew composite fabrics now called 'bonded leather,'" which "have a surface layer of vinyl or polyurethane, a center layer of fabric, and a backing that contains some leather fibers . . . glued onto the fabric for a look that is similar to the back of a leather hide." J.A. 108. The article's author advocated against using the term "bonded leather" to refer to these products by arguing that the term is "bound to confuse consumers, who are likely to hear only the word 'leather.'" J.A. 108. The article then quoted Dr. Cory as saying that calling these products bonded leather "is deceptive because it does not represent its true nature. It's a vinyl, or a polyurethane laminate or a composite, but it's not leather. If you tar and feather someone, does that make them a chicken?" J.A. 108.

## B.

In February 2010, DRI filed suit against Ashley, Todd Wanek (Ashley's president and CEO), LIA, and Dr. Cory. It asserted false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a), as well as various violations of North Carolina and

Washington law.[3]  In September 2012, the district court granted Wanek's and Dr. Cory's motions to dismiss for lack of personal jurisdiction.  J.A. 161.  While these two individuals are listed as Appellees in this case, DRI does not seek review of the district court's September 2012 order.  See Appellant's Br. at 26.

DRI made the following arguments before the district court. Regarding the Ashley Ad's statement--that "[s]ome upholstery suppliers are using leather scraps that are mis-represented as leather"--DRI asserted that "[a]ll informed readers" of the Ashley Ad knew that the ad was "referring to DRI and its NextLeather® bonded leather" because DRI was the only company selling the kind of product described.  J.A. 47.  It argued that the ad was false because DRI was not marketing its product as leather, but rather as "bonded leather."  J.A. 47.

With respect to the Gunin Article, DRI characterized the statement by the LIA Laboratory director, Dr. Cory--that calling bonded leather "leather" is deceptive--as "explicitly accus[ing]

---

[3] Specifically, DRI alleged violations of the North Carolina Unfair and Deceptive Trade Practices Act and the Washington Consumer Protection Act, as well as several claims under both North Carolina and Washington law: tortious interference with business relations, civil conspiracy, negligence and fraudulent concealment, negligent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, and punitive damages.  J.A. 55-63.

7

DRI of . . . selling a counterfeit product." J.A. 50. DRI maintained that "there could be no doubt" that "Dr. Cory's defamatory statements were referring to DRI and NextLeather®," J.A. 50, and that the statement was false because DRI was selling NextLeather® as bonded leather, rather than as leather.

DRI also contended that Dr. Cory's statement in the Andrews Article--that the term "bonded leather" is deceptive as applied to some products--was false because the FTC Guides allowed, and Dr. Cory had advised, DRI to label the product as "bonded leather."

Finally, DRI argued that the defendants' statements damaged DRI's "actual and potential customer relationships." J.A. 55. It pointed to a decline in sales of NextLeather® to furniture manufacturers following publication of the ad and articles, and it asserted that it was "forced to spend substantial sums to address [the] resulting damage." J.A. 55.

DRI moved for partial summary judgment, and Ashley and LIA cross-moved for summary judgment. The district court granted Ashley's and LIA's motions for summary judgment in August 2014. Relevant here, the district court determined that DRI failed to present sufficient evidence to establish that the Ashley Ad, the Gunin Article, or the Andrews Article were false or misleading.[4]

---

[4] The district court also rejected DRI's arguments in
(continued)

8

Regarding the Ashley Ad, the district court held that DRI failed to establish that the ad was false on either of the grounds DRI presented. As an initial matter, DRI failed to show that the contested statement--that "[s]ome upholstery suppliers are using leather scraps that are mis-represented as leather"-- conveyed the message that DRI was selling NextLeather® as leather. See J.A. 1779–84. The court reasoned that "a reader of Ashley's ad would have had to make at least two sizeable inferences" in order to glean this message from the ad. J.A. 1780. Because the ad does not use the term "bonded leather," "the reader would first have to ascertain that the ad references bonded leather, as opposed to . . . any other similarly produced products." J.A. 1780-81. Second, the reader would "have to infer that the ad was referring solely to DRI's NextLeather®." J.A. 1782. DRI also failed to establish its alternative theory of liability with respect to the ad--that the ad was false because it misled consumers--because it did not show that "a single consumer was misled" by the ad. J.A. 1784.

Turning to the Gunin and Andrews Articles, the court held that neither article contained a false statement of fact. As to Dr. Cory's statement in the Gunin Article--that referring to

---

support of its state law claims, granting summary judgment to the defendants on all of them. See J.A. 1792-1807.

9

bonded leather as "leather" would be "outright fraud"—-the court pointed out that this statement was true because bonded leather contains only scraps or shavings of leather, rather than whole hide. Additionally, DRI offered no "evidence linking the quote in the Gunin article with a single customer's refusal to purchase NextLeather® or general customer confusion about Dr. Cory's statements." J.A. 1774. As for the Andrews Article, the court held that Dr. Cory--in stating that using the term "bonded leather" is "deceptive"--was "giving his opinion on how a customer would perceive the term bonded leather" because he "did not claim to know the law, did not reference the law, and did not maintain that using such term would result in legal liability." J.A. 1777. DRI timely appealed.

## II.

We review de novo the district court's grant of summary judgment, "viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to" the nonmoving party. PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[I]t is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It

10

must provide more than a scintilla of evidence--and not merely conclusory allegations or speculation--upon which a jury could properly find in its favor." CoreTel Va., LLC v. Verizon Va., LLC, 752 F.3d 364, 370 (4th Cir. 2014) (citation omitted).

## III.

On appeal, DRI argues that the district court erred in granting summary judgment to Ashley and LIA because DRI's evidence with respect to the Ashley Ad, the Gunin Article, and the Andrews Article was sufficient to establish false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a).[5] In the discussion that follows, we begin with a brief overview of the governing legal framework, and then consider each of the purportedly false statements in turn.

## A.

A plaintiff asserting a false advertising claim under the Lanham Act must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing

---

[5] DRI also argues on appeal that the district court erred in granting summary judgment to Ashley and LIA on its claim under the North Carolina Unfair and Deceptive Trade Practices Act. We have considered DRI's arguments with respect to this claim and find them to be without merit.

11

decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

PBM Products, 639 F.3d at 120 (emphasis added) (quoting Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002)). Because the plaintiff must establish all five elements of the claim, failure to establish any one element is fatal to the claim. The parties here focus their arguments on the first element--whether the defendants made false or misleading assertions of fact. Because we find that DRI failed to substantiate this element with respect to any of the contested statements, we limit our analysis accordingly.

For false advertising liability to arise, the contested statement must be false, and it must be a representation of fact. Regarding falsity, the statement "must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." Id. (quoting C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997)). Thus, the plaintiff can show falsity in either of these two ways. First, a statement that is false on its face--or literally false--"may be either explicit or conveyed by necessary implication when,

12

considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Id. (quoting Scotts, 315 F.3d at 274). "In analyzing whether an advertisement . . . is literally false," courts must "determine, first, the unambiguous claims made by the advertisement . . . , and second, whether those claims are false." Scotts, 315 F.3d at 274 (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002)).

Second, the plaintiff can show that, although a statement may be true on its face and not false by necessary implication-- it is otherwise false by implication because it would likely mislead consumers of the product the statement concerns. The plaintiff must support a theory of implied falsehood with evidence that the advertisement "tend[s] to mislead or confuse [such] consumers." Id. at 273 (quoting Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992)) (internal quotation mark omitted). Such evidence of consumer confusion must "account for the . . . allegations in the case"--or, show that the statement misled consumers in the way the plaintiff claims it did; otherwise, it "fail[s] to provide the required evidence of [implied] falsity." PBM Products, 639 F.3d at 122.

13

In addition to being false, the statement must be a representation of fact, or, a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 496 (5th Cir. 2000) (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)) (internal quotation marks omitted). By contrast, statements "of general opinion [are] not actionable under [§ 1125]." Id. To be a representation of fact, the statement must "admit[] of being adjudged true or false in a way that . . . admits of empirical verification." Id. (quoting Presidio Enters. v. Warner Bros. Distrib. Corp., 784 F.2d 674, 679 (5th Cir. 1986)) (internal quotation mark omitted). With this framework in mind, we discuss each purportedly false advertisement in turn.

B.

1.

We agree with the district court that DRI failed to substantiate a claim that the Ashley Ad is either literally false or impliedly false. Beginning with literal falsity, DRI argues on appeal that the ad's statement--that "[s]ome upholstery suppliers are using leather scraps that are mis-represented as leather," e.g., J.A. 274--was literally false by necessary implication. It argues that "[s]ome upholstery

14

suppliers" refers to suppliers of bonded leather generally and to DRI--as supplying NextLeather®--specifically, and that the ad's audience would have recognized these references "as readily as if [they] had been explicitly stated." PBM Products, 639 F.3d at 120 (quoting Scotts, 315 F.3d at 274). In particular, DRI argues that the ad's reference to NextLeather® is unmistakable when viewed in the broader context in which consumers would have understood it. DRI then contends that, having necessarily implied a reference to bonded leather and DRI's NextLeather®, the ad communicates the false messages that bonded leather was being marketed as leather and that DRI was marketing NextLeather® as leather.

We find DRI's literal falsity argument confounding. At bottom, DRI asserts that, even though the ad refers only to products marketed as leather, it unmistakably refers to products not marketed as leather, but as bonded leather or NextLeather®. In order to arrive at this conclusion, one has to follow DRI's winding inquiry far outside the face of the ad, which the concept of literal falsity by necessary implication does not allow us to do. And, one has to be willing to accept that the ad means the opposite of what it says, an interpretation we find insupportable.

In evaluating claims asserting literal falsity by necessary implication, courts have emphasized the limits of this theory of

liability, holding that not "all messages implied by an advertisement will support a finding of literal falsity." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 35 (1st Cir. 2000). "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, . . . the less likely it is that a finding of literal falsity will be supported." Id. (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1181 (8th Cir. 1998)). And "[c]ommercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false." Id. In other words, a false advertising claim cannot rely on the consumer to draw inferences that an ad only hints at or merely suggests.

A false advertising claim can, however, depend on the consumer to draw conclusions that are logically necessary from an ad's statements. In Castrol Inc. v. Pennzoil Co., a Pennzoil advertisement made two claims--first, that motor oil viscosity breakdown leads to engine failure, and second, that Pennzoil's product "outperforms any leading motor oil against viscosity breakdown." 987 F.2d 939, 947 (3rd Cir. 1993). Though the advertisement did not "specifically mention its competitors," the court determined that the advertisement "left the consumer with the obvious conclusion that Pennzoil is superior to the other leading brands in protection against engine problems," and

16

thus "Pennzoil did, by implication, compare its effectiveness against engine wear to that of its competitors." Id. at 946. Put differently, a claim of literal falsity by necessary implication could stand where the contested conclusion necessarily flowed from the ad's statements.

Although DRI acknowledges that the Ashley Ad "d[id] not specifically use the words 'bonded leather,'" it argues that the ad nevertheless necessarily implied a false message regarding bonded leather and NextLeather® because "it is indisputable . . . that the market understood [the Ashley Ad as targeting bonded leather]." Appellant's Br. at 31. DRI urges that consumers would have understood this implication given the broader market context of the Ashley Ad, pointing to the following evidence in support: (1) another Furniture Today article, published on March 30, 2007--between the first and second publications of the Ashley Ad--noting that "Ashley is urging buyers to 'be aware' of bonded leather," Appellant's Br. at 31; J.A. 1678; (2) a survey by Ashley's expert witness showing that viewers of the ad understood it to refer to bonded leather, Appellant's Br. at 32; (3) email exchanges between Ashley and Dr. Cory suggesting that Ashley sought to disparage bonded leather, id. at 32; J.A. 321, 332; and (4) testimony by DRI's owner and president and by a furniture manufacturer to the effect that "DRI was the only company offering a product like

17

NextLeather® and marketing it as 'bonded leather,'" Appellant's Br. at 32; see also J.A. 1289-90; 1496-1500.

In making this argument, DRI asks us to reach entirely outside the face of the ad and into the context surrounding the ad's publication to uncover a false message it argues is necessarily implied. Far from making the argument that the ad's statements logically require the conclusion that the ad concerns bonded leather, DRI, or NextLeather®, DRI instead relies on the consumer to scrape together that conclusion from reading other articles from the publication and having knowledge that only DRI was marketing a product like the one described in the ad. This expectation is made all the more unreasonable given the fact that the Ashley Ad mentions neither DRI nor its NextLeather® product, and instead, directly refers to a category that would exclude bonded leather and NextLeather®--products marketed with the unqualified term "leather." Thus, DRI stretches the concept of literal falsity beyond its bounds in urging us to conclude that the ad means the opposite of what it says. In so doing, DRI fails to establish that the Ashley Ad is literally false.

Turning to implied falsity, DRI argues that, even if the Ashley Ad is not false on its face or by necessary implication, it is otherwise false by implication because it misled consumers about its NextLeather® product. For support, DRI again points to the survey conducted by Ashley's expert witness, maintaining

18

that it shows that consumers understood the ad to be about bonded leather, which, "at the time was synonymous with NextLeather®." Appellant's Br. at 40.

But to "provide the required evidence of [implied] falsity"--that the contested statement confused consumers--the proffered evidence must "account for the . . . allegations in the case," PBM Products, 639 F.3d at 122--here, that the Ashley Ad confused consumers about NextLeather®. DRI fails to make this required showing. The survey made no mention of DRI or NextLeather®. Rather, it asked consumers who had attended the Spring High Point Market between 2004 and 2013 what message they thought the ad conveyed and to which specific suppliers they thought the ad referred. The survey results showed that "zero respondents gave an answer that could be interpreted as a belief that DRI or NextLeather were specifically mentioned as[,] . . . [or] implied or suggested to be[,] the supplier of the upholstery material described" in the ad. J.A. 424. Thus, because DRI's claim depends on consumer confusion about NextLeather®, and the survey on which DRI relies demonstrates no confusion about DRI or its product, DRI fails to substantiate a theory of implied falsity in the Ashley Ad.

### 2.

We also agree with the district court that DRI failed to provide sufficient support for a false advertising claim with

19

respect to Dr. Cory's statement in the Gunin Article. DRI argues that Dr. Cory's statement--that "[t]o call [alternative leather products such as bonded leather] 'leather' is outright deception, outright fraud," J.A. 86--is literally false by necessary implication. DRI contends that the statement must be understood as "referring specifically to NextLeather®" because, in the same article, Dr. Cory described the characteristics of bonded leather, and that description "applies to NextLeather®." Appellant's Br. at 45. Thus, DRI maintains, "any reasonable juror would conclude that [Dr.] Cory was calling DRI's use of the term 'bonded leather'--not 'leather'--'deceptive and fraudulent.'" Id.

However, the statement that calling bonded leather products "leather" is deceptive unambiguously communicates the message that using the unqualified term "leather" for products that are not leather is misleading. Nothing on the face of this statement suggests that the use of the term "bonded leather"--by DRI or anyone else--is misleading. And DRI acknowledges that its NextLeather® product is not leather as that term is understood in the furniture upholstery industry, but is instead a "synthetic leather-look furniture covering product." Appellant's Br. at 8. Therefore, we agree with the district court that Dr. Cory's statement cannot qualify as false or misleading because it is true, and accordingly conclude that DRI

20

has failed to support its false advertising claim with respect to the Gunin Article.

### 3.

Finally, we agree with the district court that DRI failed to provide sufficient evidence to demonstrate that Dr. Cory's statement in the Andrews Article was a false or misleading representation of fact. As discussed above, this article advocated against use of the term "bonded leather" as "bound to confuse consumers," and it quoted Dr. Cory as saying that the term "is deceptive because it does not represent [the] true nature" of the products it is used to describe. J.A. 108. Instead, such products are more accurately described as "vinyl," "polyurethane laminate," or "composite," rather than with a term that includes the word "leather." J.A. 108.

The district court concluded that this statement expressed an opinion "on how a customer would perceive the term bonded leather." J.A. 1777. DRI argues that, even if Dr. Cory's statement conveys an opinion, it is still actionable under the reasoning of Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990). In that case, the Supreme Court held that opinion statements are not automatically protected against defamation claims because, for example, the statement, "'In my opinion Jones is a liar,' . . . implies a knowledge of facts which lead to the conclusion that Jones told an untruth." Id. at 18. The Court reasoned

21

that "[i]t would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" Id. at 19 (quoting Cianci v. N.Y. Times Pub. Co., 639 F.2d 54, 64 (2d Cir. 1980)).

If we were to extrapolate the Milkovich rule to the Lanham Act context, we could draw from it that statements of opinion may not automatically be protected from false advertising claims if they "imply a knowledge of facts which lead to the conclusion" that the statement were true. Id. at 18. By this reasoning, DRI's argument is unpersuasive, however, because Dr. Cory's statement does not imply a basis in facts leading to the conclusion that consumers are or have been deceived by the term "bonded leather." It communicates only the hypothesis—yet to be proved or disproved—that "bonded leather" has the potential to confuse consumers.

More pertinent to our analysis than the Milkovich defamation rule are decisions rendered in the Lanham Act context, which, as discussed above, have held that statements "of general opinion [are] not actionable under [§ 1125]." Pizza Hut, 227 F.3d at 496. Rather, an actionable statement must "admit of being adjudged true or false in a way that . . . admits of empirical verification." Id. An example of a type of statement not "admit[ting] of empirical verification" that

22

courts have recognized is "[a] prediction, or statement about the future, [which] is essentially an expression of opinion" that is not actionable. Presidio, 784 F.2d at 680; see also id. at 678-79.

In the context of an article suggesting that a marketing term is "bound to confuse" consumers, stating that the term is "deceptive" is merely putting that point a different way. Unlike stating that the term "has been shown to deceive" consumers, which might "admit[] of empirical verification," Pizza Hut, 227 F.3d 496, merely calling a term "deceptive" suggests only that it is the speaker's view that the term has the potential to deceive. In other words, a prediction about a term's power to deceive expresses only an opinion about the term's likely effect on consumers; it is not a representation of fact--false or otherwise--and is thus not actionable under the Lanham Act. See Presidio, 784 F.2d at 680; Pizza Hut, 227 F.3d 496. Therefore, DRI has also failed to substantiate its claim as to Dr. Cory's statement in the Andrews Article.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

23